UNIVERSITY INTERSCHOLASTIC LEAGUE and Bailey Marshall, Appellants,

v.

Bruce LaFeyette BUCHANAN, et al., Appellees.

UNIVERSITY INTERSCHOLASTIC LEAGUE and Dr. Bailey Marshall, Appellants,

v.

Phillip Earl BOMAR, Jr., et al., Appellees.

Nos. 3–92–108–CV, 3–92–161–CV.

Court of Appeals of Texas, Austin.

Feb. 3, 1993.

Rehearing Overruled March 31, 1993.

William C. Bednar, Jr., Eskew, Muir & Bednar, Austin, for University Interscholastic League.

James R. Raup, McGinnis, Lochridge & Kilgore, Austin, for Austin Independent School Dist. and Dr. Jim Hensley.

Diane M. Henson, Graves, Dougherty, Hearon & Moody, Austin, for Bruce LaFeyette Buchanan and Phillip Earl Bomar, Jr.

Leonard J. Schwartz, Schwartz & Eichelbaum, P.C., Austin, for Dallas Independent School Dist. and Dr. Marvin E. Edwards.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

The University Interscholastic League and its Executive Director, Bailey Mar-

shall, (collectively hereinafter the "UIL") appeal the judgment of the trial court granting a permanent injunction against the enforcement of the UIL's over–19 rule.[1] We will affirm the judgment of the district court.

## FACTUAL BACKGROUND

Composed of representatives of Texas school districts, the UIL is a voluntary organization that regulates, among other things, the competitive athletics of the junior and senior high school student athletes in Texas. This case involves a challenge to section 400(a) of the UIL Constitution and Contest Rules (the "over–19 rule") which states: "Subject to the other sections of this subchapter, an individual is eligible to participate in a League varsity contest as a representative of a participant school if that individual . . . is less than 19 years old on September 1 preceding the contest. . . ."

The UIL states that the underlying purpose of the over–19 rule is to ensure the safety of the participating student athletes and the equality of competitors. It argues that one policy justification for the over–19 rule is the avoidance of potential injury which might result if younger, less developed high school students are required to compete against older students. Furthermore, the UIL argues that the over–19 rule discourages the practice of "redshirting," i.e., having students repeat grades so that they will be more mature and better athletes during their high school years. The UIL permits no exception to or waiver of the over–19 rule based on special circumstances of individual students.

Appellees, Bruce Buchanan and Phillip Bomar (the "Students"), obtained permanent injunctions allowing them to participate in the 1991 football season. The final judgments rendered in these causes stated that the over–19 rule violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp.1992) ("Section 504"), as applied to the Students. Section 504 provides in pertinent part:

> No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C.A. § 794.

The factual bases for the permanent injunctions involving the Students are as follows.

### Bruce Buchanan

Buchanan turned nineteen years old before he entered the twelfth grade at Travis High School of the Austin Independent School District ("Austin ISD"). Because he had learning disabilities, he had repeated the first and seventh grades. During ninth grade, Buchanan began participating in his school's football program. Although he was nineteen at the start of his senior year, Buchanan was below the average weight and height of his team members, and he never was a starter on the team.

Both Buchanan's mother and his Admission, Review and Dismissal (ARD) Committee[2] requested a waiver from the over–19 rule. The UIL responded that there were "no rules which allow for a waiver of the 19–year–old rule." Buchanan instituted this lawsuit against the UIL and its director, and later joined Austin ISD and Dr.

---

1. As a preliminary matter, we address the Students' motion to dismiss this appeal as moot. For reasons discussed later in this opinion, we decline to dismiss the appeal as moot.

2. The ARD Committee is composed of, at a minimum, a school administrator, a special education teacher, a regular education teacher, and the child's parent. Other persons may be included in the ARD Committee if determined to be necessary. One of the functions of the ARD Committee is to develop an individualized educational plan (IEP) for the student. Buchanan's IEP did not include interscholastic football as part of his program. Buchanan never petitioned for an administrative appeal of the decision of the ARD Committee to the Texas Education Agency. Buchanan's mother testified that because the ARD Committee recommended a waiver from the over–19 rule, she agreed with its decision, and thus did not feel it was necessary to appeal the decision.

Jim Hensley, the Superintendent of Austin ISD, as defendants in the suit to enjoin the enforcement of the rule.

Phillip Bomar

Bomar was also nineteen years of age at the start of his senior year. He had repeated his fourth and seventh grades, and was classified by his school district, Dallas Independent School District ("Dallas ISD"), as learning disabled. Like Buchanan, Bomar began playing football for his high school, Justin F. Kimball High School. Bomar was average in size compared to the other members of his football team and was a starting linebacker during his junior year of high school.

Bomar's mother and high school principal applied for a waiver of the over-19 rule for Bomar, which the UIL refused. In response, Bomar filed this action against the UIL, its director, Dallas ISD, and Dr. Marvin Edwards, the Superintendent of Dallas ISD.

## CROSS–CLAIMS OF THE SCHOOL DISTRICTS

Both school districts filed cross-claims against the UIL, stating that the UIL's mandatory forfeiture rule caused them to violate the rights of the Students. Section 700(a)(2)(C)(ii) of the UIL Constitution and Contest Rules (the UIL's "mandatory forfeiture rule") provides that if a school allows a student who is finally determined ineligible to participate in a UIL contest under a court order, the school must forfeit all contests in which the student participated. In the past, the UIL has enforced the mandatory forfeiture rule to require that a school forfeit all of its contests in which the litigating student participated even though the student's participation was pursuant to a lawful court-ordered injunction.[3]

In October 1991, the trial court issued temporary orders enjoining the enforce-

ment of the over–19 rule against the Students and the mandatory forfeiture rule against Austin ISD and Dallas ISD. These two causes were then consolidated for purposes of trial and appeal. After a trial on the merits, the district court rendered a final judgment in favor of the Students and the school districts, enjoining the enforcement of the two rules.

From this judgment, the UIL appeals bringing forth four points of error.

## IMPACT OF THE REHABILITATION ACT ON THE OVER–19 RULE

 In order to obtain injunctive relief, an applicant must establish the existence of a wrongful act, imminent harm, and irreparable injury, and the absence of an adequate remedy at law. *Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 529 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.— Dallas 1989, no writ). The decision to grant or deny a permanent injunction lies within the trial court's sound discretion, and appellate review is restricted to whether the action involved a clear abuse of discretion. *Hues*, 814 S.W.2d at 529; *Priest*, 780 S.W.2d at 875.

 The UIL argues in its first two points of error that the trial court erred in granting the permanent injunctions against the over–19 rule and in awarding attorneys' fees.[4] In its first point of error, the UIL alleges that the rule does not discriminate solely on the basis of the Students' handicaps; the UIL maintains that the Students are ineligible due to their ages which are determined by their birth dates. The rule and its purposes, it contends, apply equally to both handicapped and non-handicapped students.

---

3. *See Texas Educ. Agency v. Dallas Indep. Sch. Dist.*, 797 S.W.2d 367, 369 (Tex.App.—Austin 1990, no writ). (This Court held that the appeal in that case was moot, and therefore the underlying order was vacated. Accordingly, the UIL's determination of ineligibility became final and triggered the enforcement of the mandatory forfeiture rule).

4. As a preliminary matter, the UIL contends in *its second point of error that the Students do* not meet the definition of "qualified handicapped persons" under section 504 of the Rehabilitation Act. After reviewing the Act and its attendant regulations, we reject this argument and conclude that both students meet the definition of "qualified handicapped persons."

We agree that the UIL's enforcement of its over–19 rule as to these Students was not on the basis of a current handicap or because of a history of being handicapped. However, the record clearly demonstrates that both Students repeated grades in school because of learning disabilities. Had they not experienced difficulties in the classroom and progressed through school at a pace slower than most students, they would have turned nineteen after September 1 of their senior year and thus would have been age-eligible to participate in interscholastic athletics.

The United States District Court, in *Doe v. Marshall*, 459 F.Supp. 1190 (S.D.Tex. 1978), *vacated and remanded on other grounds*, 622 F.2d 118 (5th Cir.1980), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981),[5] invoked a balancing test of the harms inflicted upon the various parties in its determination of whether to grant a preliminary injunction of a UIL rule. *Id.* at 1192. In the present cases, evidence demonstrated that the Students would benefit emotionally by participating in competitive athletics. The evidence did not show that these Students had been involved in redshirting or that they presented a danger to other student athletes; the concerns that made the rule necessary are not present in these causes and the UIL is not harmed. Thus, the equities before the trial court weighed in favor of enjoining the enforcement of the rule.

The United States Supreme Court has stated that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers.... [T]o assure meaningful access, *reasonable accommodations* in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (discussing *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)) (emphasis added). Furthermore, the United States Court of Appeals in *Brennan v. Stewart*, 834 F.2d 1248, 1262 (5th Cir.1988), concluded that "our precedent requires that the

'reasonable accommodation' question be decided as an issue of fact...."

Although the UIL provides a waiver procedure for some eligibility rules, e.g., the four-year eligibility rule, it fails to furnish such a process for the over–19 rule. Since the UIL already utilizes a waiver procedure for some rules, the evidence indicates that instituting such a procedure for the over–19 rule might be a reasonable accommodation in the UIL program to ensure that handicapped persons achieve meaningful access to the competitions regulated by the UIL. We find the U.S. District Court's reasoning on this issue in *Booth v. University Interscholastic League*, No. A–90–CA–764 (W.D.Tex. Oct. 4, 1990) (case dismissed as moot Jan. 14, 1991), particularly persuasive:

> [T]o uphold the [UIL's] blanket policy against consideration of the Plaintiff's circumstances in this case would be to undermine the objectives of the Rehabilitation Act without advancing the policies behind the 19 year-old eligibility rule. There is no evidence before the Court to suggest that the [UIL] bases its decision to bar the Plaintiff from playing high school football on any particular harm that might result if he is allowed to play, or on anything other than a policy of strictly enforcing its rules. But the Rehabilitation Act *requires* that federally assisted programs do more for those who fall within its ambit. For these reasons, requiring the [UIL] to give special consideration to the Plaintiff based on his history of being handicapped is a reasonable accommodation.

*Booth*, at 11–12. The Students in these causes are entitled to special consideration by the UIL to guarantee that the objectives of Section 504 are effectuated. A waiver mechanism for the over–19 rule would permit the UIL to consider the facts of particular situations in order to make individualized determinations as to the enforcement of the rule. Such determinations are *reasonable accommodations* which would advance both the purposes of Section 504 and the policies behind the over–19 rule. Un-

---

**5.** Although not controlling, this Court looks to federal precedent for its persuasive value.

der these factual circumstances, the "no-exception" policy to the over–19 rule must yield to Section 504's reasonable accommodation requirement established by the United States Supreme Court in *Alexander*.

Accordingly, we hold that the trial court did not abuse its discretion in enjoining the enforcement of the over–19 rule. Points of error one and two are overruled.

### EXHAUSTION OF REMEDIES

■ In its third point of error, the UIL alleges that, because the Students did not exhaust the administrative remedies under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C.A. §§ 1400–1484 (West Supp.1992),[6] the district court lacked jurisdiction over the causes. Specifically, it complains that the Students did not comply with section 1415(f) of the IDEA which states, "before the filing of a civil action under [the Rehabilitation Act and] such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C.A. § 1415(f). The applicable remedy under this statute consists of a due process hearing and subsequent review for any complaint raised by a handicapped child or its parents regarding the child's education. 20 U.S.C.A. § 1415(b)(2), (c). The UIL maintains that the Students did not comply with this prerequisite for civil suits because they did not request a due process hearing to contest the exclusion of interscholastic athletics from their IEPs.[7]

The Students respond that the IDEA and Section 504 are different statutes with different purposes. They urge that while the

IDEA strives to assure that handicapped children receive appropriate free public education, Section 504 prohibits discrimination against handicapped persons. *See Smith v. Robinson*, 468 U.S. 992, 1016, 104 S.Ct. 3457, 3470, 82 L.Ed.2d 746 (1984). The Students argue that their complaint is against the UIL for discrimination on the basis of their handicaps, not against the school districts for denial of a free appropriate public education; hence, relief was only available under Section 504. They argue that, because the UIL is not vested with the duty to provide a free appropriate public education under the IDEA, the Students could not assert their action against the UIL under the IDEA. The record reflects that the school districts applied to the UIL for waivers to the rule which the UIL denied. Therefore, the Students and their school districts acted in accordance with the UIL rules, and the cause of action was governed by Section 504 and not the IDEA. We agree with the Students regarding this exhaustion of remedies point, and thus we overrule the UIL's third point of error.

### MANDATORY FORFEITURE RULE

In its fourth and final point of error, the UIL contends that the trial court erred in enjoining the mandatory forfeiture rule and in awarding attorneys' fees. It insists that "the rule is reasonably related to a legitimate state purpose and is not arbitrary, capricious, or fundamentally unfair."

Issue of Mootness

The Students reurge this Court to dismiss the appeal as moot.[8] They argue that since the 1991 football season has ended and they have graduated, an active contro-

---

**6.** Among the stated purposes of IDEA are

to assure that all children with disabilities have available to them, within the time periods specified in section 1412(2)(B) of this title, a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of children with disabilities and their parents or guardians are protected....

20 U.S.C.A. § 1400(c).

**7.** The UIL admitted in oral argument that had the school districts declared the Students eligible under the IDEA, the UIL would not have abided by such determination. We also note that the school districts requested waivers from the UIL of the over–19 rule, and therefore the Students had no need to invoke an administrative procedure designed to request affirmative action from the school authorities.

**8.** We overruled the Students' original motion to dismiss as moot.

versy no longer exists. The school districts respond by urging that such action on our part would vacate the trial court's judgment and would permit the UIL to invoke the sanctions contained in the mandatory forfeiture rule.

The mootness doctrine is well established. Appellate courts only determine cases in which an actual controversy exists. *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988); *Texas Educ. Agency,* 797 S.W.2d at 369. The issue of whether an injunction is valid becomes moot when the injunction does not continue to have effect. *See Parr v. Stockwell,* 322 S.W.2d 615, 616 (Tex.1959); *Texas Educ. Agency,* 797 S.W.2d at 369; *Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ). An appellate court must set aside the judgment and dismiss the cause when an appeal is moot. *Texas Educ. Agency,* 797 S.W.2d at 369; *Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass Clubs,* 622 S.W.2d 594, 596 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

Two exceptions to the mootness doctrine currently exist: (1) the "capable of repetition exception" and (2) the "collateral consequences exception." *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). However, neither exception applies to these causes. *See Spring Branch I.S.D.,* 764 S.W.2d at 18–19.

The UIL urges this Court to avoid dismissal by adopting a new exception to the mootness doctrine, the "public interest exception." According to the UIL, thirty-six states have recognized the "public interest exception," which allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public but for some reason evades appellate review. The UIL points out that other states have applied this doctrine in high school athletic controversies such as this one.

In *Texas Education Agency,* 797 S.W.2d at 369, under similar facts as these, we determined that the appeal was moot because the football eligibility of the litigating students had expired. *See also Spring Branch I.S.D.,* 764 S.W.2d at 18. However, these cases are distinguishable from the instant cause. In neither of those cases was the question of attorneys' fees involved.[9] Furthermore, in the instant cause, the school districts, which are parties to this appeal, have a direct interest in the continued viability of the district court judgment to prevent the UIL from enforcing the mandatory forfeiture rule. *See Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir.1976) (Student brought action to compel university to grant a degree. After injunctive relief was granted, university awarded degree and appealed the judgment. The Fifth Circuit Court of Appeals held that the case was not moot because the legal interests of the parties continued to be adverse.). Therefore, because of these distinguishing facts, we have decided to review the case pursuant to a "public interest exception" to the mootness doctrine, and adhere to our earlier ruling overruling the Students' motion to dismiss the appeal as moot.

Because we elect to review these causes under the "public interest exception" to the mootness doctrine, and because we affirm the lower court's final judgment that the over–19 rule violates Section 504 of the Rehabilitation Act, we affirm the district court's ruling that the Students were eligible to play football during the 1991 season. Therefore, since there is no basis for the UIL to invoke the mandatory forfeiture rule, we have no need to address its fourth point of error.

CONCLUSION

Finding no error, the judgment of the district court is affirmed.

---

9. If we moot this appeal and the judgment of the district court is vacated, the judgment for attorneys' fees is vacated as well.