pca v. ut 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-284-CV





PCA HEALTH PLANS OF TEXAS, INC.,



 APPELLANT


vs.





BERNARD RAPOPORT, ELLEN C. TEMPLE, LOWELL H. LEBERMANN, JR.,


PETER R. CONEWAY, ROBERT J. CRUIKSHANK, REVEREND ZAN W. HOLMES, JR.,


HONORABLE TOM LOEFFLER, DR. MARIO E. RAMIREZ, AND MARTHA E. SMILEY,


MEMBERS OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 93-06199, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING



 






 PCA Health Plans of Texas, Inc. ("PCA") filed a petition in district court for a writ
of mandamus, declaratory judgment, and injunctive relief against the members of the Board of
Regents of the University of Texas System ("Regents"). PCA sought enforcement of the Texas
State College and University Employees Uniform Benefits Act, arguing that the Act required the
Regents to include PCA as part of the University's health care plan for its employees and retirees. 
Tex. Ins. Code Ann. art. 3.50-3, § 4(b)(4)(D) (West Supp. 1994). The district court denied the
writ of mandamus and all other requested relief. We will affirm.



BACKGROUND


 PCA is a certified and federally-qualified health maintenance organization ("HMO")
that has provided health care services to employees of the University of Texas at Austin ("UT
Austin") since 1987. PCA's health care plan was one of the options available to UT Austin
employees and retirees under the Texas State College and University Employees Uniform
Insurance Benefits Act. Tex. Ins. Code Ann. art. 3.50-3 (West 1981 & Supp. 1994) ("University
Employees Act"). PCA is also approved to provide health care services to state employees under
the Texas Employees Uniform Group Insurance Benefits Act, the statute governing health care
benefits provided to all other state employees. Tex. Ins. Code Ann. art. 3.50-2 (West 1981 &
Supp. 1994) ("State Employees Act").

 In February 1993, PCA filed its application to continue providing services to UT
Austin employees and retirees for the 1993-1994 fiscal year. However, the University System
Administration recommended to the Regents that the University not continue to contract for health
services from PCA. In April 1993, the Regents decided not to include PCA as one of the health
care options provided UT Austin employees and retirees. PCA filed a petition in district court
for writ of mandamus and injunctive relief seeking to compel the Regents to contract with PCA
for the 1993-1994 fiscal year. PCA also sought declaratory judgment that the University
Employees Act imposed upon the Regents a mandatory duty to contract with PCA to provide
health care services to University employees and retirees. See University Employees Act §
4(b)(4)(D). After a hearing, the trial court rendered judgment denying mandamus and all other
relief requested. PCA appeals.



DISCUSSION


 In its first point of error, PCA argues the trial court erred in denying PCA's request
for a writ of mandamus. A writ of mandamus is appropriate to compel public officials to perform
ministerial acts. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); Anderson v. City of Seven
Points, 806 S.W.2d 791, 793 (Tex. 1991). Mandamus is proper in this case only if the Regents
of the University of Texas had no discretion to reject PCA's application to provide health care
services to UT Austin employees and retirees. 

 The University Employees Act governs the health coverage a state university must
provide its employees and retirees. The statute provides:



The institution shall select and contract for services performed by health
maintenance organizations that are approved by the federal government, if
available, or by the State of Texas, if available, to offer health-care services to
eligible employees and retired persons in a specific area of the state. . . . A health
maintenance organization that has been approved to provide health-care services
to employees and retired persons of the state under the Texas Employees Uniform
Group Insurance Benefits Act (Article 3.50-2, Vernon's Texas Insurance Code) is
qualified upon proper application to the institution to provide similar services to
eligible employees and retired persons of any institution or agency under this Act
located in the same area of the state. More stringent requirements may not be
imposed on health maintenance organizations under this Act than are imposed by
the state or by the federal government.



University Employees Act § 4(b)(4)(D) (emphasis added). PCA asserts that because it is a health
maintenance organization (HMO) approved to provide health care services under the State
Employees Act, the Regents are required to contract with PCA to provide health care services to
university employees and retirees as well. (1) We disagree. The plain meaning of the statute is that
any HMO that has been approved to provide health care services to other state employees under
the State Employees Act is also eligible to provide those services to university employees under
the University Employees Act. (2) The statute does not directly state, nor even imply, however, that
all HMOs that have met the requirements of the State Employees Act are entitled to provide
similar services to university employees and retirees. The University Employees Act confers
discretion upon the Regents to select from among approved applicants; the discretion to select
includes the discretion to exclude a qualified HMO option. While the ERS selects the health plan
options for all other state employees, the governing regents of state universities have been given
the discretion to select a separate health plan for each institution. The scope of the Regents'
discretion is not restricted to the choices made by the ERS; otherwise there would be no purpose
in affording these institutions the option of designing comparable but distinct health care benefits.

 PCA maintains that the University Employees Act removes the Regents' discretion
to exclude ERS-approved HMOs. When the statute declares that ERS-approved HMOs are
qualified, PCA argues the term means more than approved; it means entitled. In support of this
interpretation, PCA argues that unless "qualified" is read to confer entitlement, the sentence
denominating ERS-approved HMOs as qualified becomes meaningless. PCA correctly states that
"every word in a statute is presumed to have been used for a purpose" and that every sentence,
clause, and word in a statute is to be given effect if reasonable and possible. Perkins v. State, 367
S.W.2d 140, 146 (Tex. 1963).

 We recognize that all ERS-approved HMOs are necessarily state or federally
approved, and therefore fall within the class of HMOs mentioned in the first sentence of the
statutory provision. See State Employees Act § 5(e). We agree that the sentence stating they are
"qualified" to provide services must confer some additional rights upon, or recognize some
difference between, ERS-approved HMOs and all other HMOs. If this were not the case, a
separate sentence dealing with other state or federally approved HMOs would indeed be
meaningless. However, we do not agree that ERS-approved HMOs have the right to contract with
UT Austin, depriving the University of its discretion to accept or reject any approved HMOs. 
Rather, the distinction between the two classes of HMOs is that ERS-approved HMOs have
already gone through the approval process necessary to be selected as a health provider to other
state employees, which includes examination of their bidding contracts for certification of actuarial
soundness by the State Board of Insurance. See State Employees Act § 5(a). Upon request by
the University, HMOs seeking to provide services under the University Employees Act must
submit to a similar evaluation. See University Employees Act § 4(b)(4)(B). The statute
recognizes that once an HMO has been screened by the State Board of Insurance, a second
evaluation and certification of actuarial soundness is unnecessary. The statute therefore provides
that ERS-approved HMOs are not required to submit to another such examination in order to be
eligible to contract with a state university. In this sense, HMOs approved to provide services to
state employees are already "qualified" to provide similar services to university employees; all
other HMOs must still have their bidding contracts evaluated and certified as to actuarial
soundness by the State Board of Insurance if the university so requests. University Employees
Act § 4(b). We conclude that an HMO that "is qualified . . . to provide similar services" is an
HMO that has already been screened by the State Board of Insurance pursuant to the State
Employees Act; therefore, a qualified HMO need not go through a second screening process to
be eligible to provide similar services under the University Employees Act. However, being
qualified to provide health care services does not guarantee a provider a contract with a state
university. The statute only requires the Regents to select an HMO from the pool of eligible
providers; it does not require them to select all qualified providers.

 This reading of the statute comports with the legislative purpose in enacting a
separate insurance benefits act for Texas state college and university employees. The statute is
designed to give institutions of higher education broad discretion in fashioning an employee health
care plan. The statute permits the University to "design a plan around existing local conditions." 
University Employees Act § 4(b)(1). The plan at issue in this appeal was designed to meet the
local conditions of the employees of UT Austin. The health care benefits chosen must be
"comparable," rather than identical to, those provided employees of other agencies of the State
of Texas. Id. If the effect of the statute were to require the University to contract with all HMOs
selected by the ERS under the State Employees Act, a separate statute governing institutions of
higher learning would be pointless. The very fact that the legislature has permitted educational
institutions to design a program different from that provided all other state employees
demonstrates its intent that these institutions should have autonomy in decisions about employee
health care coverage. Because the statute does not require that the Regents contract with PCA to
provide health care services to UT Austin employees and retirees, the trial court properly denied
PCA's writ of mandamus. The first point of error is overruled.

 In its second point of error, PCA asserts the trial court erred in failing to award
injunctive relief insuring that PCA's health maintenance organization health care plan is fairly
presented as a health care option to UT Austin employees for the 1993-1994 fiscal year. The trial
court's final judgment renders moot any request for temporary injunctive relief. See Isuani v.
Manske-Sheffield Radiology, 802 S.W.2d 235, 236 (Tex. 1991). To obtain permanent injunctive
relief, PCA must establish that the Regents acted improperly. See University Interscholastic
League v. Buchanan, 848 S.W.2d 298, 301 (Tex. App.--Austin 1993, no writ). PCA argues that
section 4(b)(4)(D) imposes upon the Regents a mandatory, non-discretionary duty to contract with
PCA. They contend that the Regents acted improperly when they violated this statutory duty. 
Because we have rejected the argument that the University Employees Act requires the Regents
to contract with PCA, we overrule PCA's second point of error.



CONCLUSION


 We hold that under the University Employees Act, the Regents have the discretion
to select or reject eligible, qualified HMOs, even those providing health care services to state
employees and retired persons under the State Employees Act. Accordingly, we affirm the trial
court's judgment.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith; 

 Chief Justice Carroll not participating

Affirmed

Filed: August 17, 1994

Publish

1.   PCA points to a 1987 Attorney General opinion in support of its interpretation of
the statute. See Op. Tex. Att'y Gen. No. JM-744 (1987). We conclude that this opinion does
not address the question presented in this appeal and thus lends no support to PCA's position.
2.   We will refer to these HMOs as "ERS-approved" because they have met the
requirements set forth in the State Employees Act and have been selected by the
Employee Retirement System to provide health care services to state employees pursuant
to that Act.