TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,

v.

Joseph Reil LaFLEUR, II, Appellee.

No. 06–00–00011–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 13, 2000.

Decided Nov. 15, 2000.

---

Louis A. Beaty, Timothy K. Colvin, Texas Dept. of Public Safety, Austin, for appellant.

Larry C. Hunter, Vidor, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

The Texas Department of Public Safety (DPS) appeals from an adverse ruling by the County Court at Law of Orange County which ruled that the DPS did not have the authority to revoke the concealed handgun permit of Joseph Reil LaFleur, II.

## Procedural History

1) LaFleur was granted a concealed handgun permit (No. CHL 01008105) by the DPS on March 21, 1996;

2) on August 1, 1997, LaFleur appeared in the County Court at Law of Orange County on a charge of impersonating a public servant, which was, at that time, a Class A misdemeanor.[1] He received a sentence of six months' probation and paid $202 in court costs;

3) the DPS notified LaFleur by letter dated March 9, 1998, that his concealed handgun permit would be revoked;

4) as permitted by statute,[2] LaFleur appealed to the Justice Court of Orange County. The justice court ruled in favor of LaFleur, ruling that the DPS could not revoke his concealed handgun permit;

5) the DPS appealed this ruling to the County Court at Law of Orange County,[3] filing its original petition and commencing this case;

6) after a hearing, the County Court at Law denied the DPS appeal. The DPS requested Findings of Fact and Conclusions of Law, which were signed by the court on October 25, 1999; and

7) the DPS timely filed its Notice of Appeal.[4]

## The Question of Mootness

Counsel for LaFleur filed a letter after oral argument, which we will treat as a motion to dismiss, contending that the issue before this court was moot because LaFleur's concealed handgun permit had expired. In response the DPS does not contest the expiration of the handgun permit, but contends that the expiration of the permit does not make the issue moot because the revocation of his permit affects the time in which he would be eligible to reapply for a permit.

"A case becomes moot when it appears that one seeks to obtain relief upon some alleged controversy when in reality none exists, or upon some matter which, when granted, cannot have any practical legal effect *upon a then existing controversy.*" *Pope v. City of Dallas,* 636 S.W.2d 244, 247 (Tex.App.—El Paso 1982, no writ) (emphasis added); *see also Kolsti v. Guest,* 576 S.W.2d 892, 893 (Tex.Civ.App.—Tyler 1979, no writ); *Parks v. Francis,* 202 S.W.2d 683, 686 (Tex.Civ.App.—Fort Worth 1947, no writ).

▮▮▮▮ LaFleur has not reapplied for a handgun permit. Thus, there is no existing justiciable controversy at this time. A justiciable controversy must involve a dispute of something more than a hypothetical or abstract character. LaFleur's license has expired, and no application for a new license is pending. No actual controversy now existing between the parties; the issue is moot. *See Nat'l Collegiate Athletic Ass'n v. Jones,* 1 S.W.3d 83, 86 (Tex.1999).

▮▮▮▮ There are, however, exceptions in which an appellate court may review a case after it becomes moot if the appeal challenges certain conduct that is of such short duration that the appellant cannot obtain review before the issue becomes

---

1. TEX.PEN.CODE ANN. § 37.11(b), Act of May 29, 1993, 73rd Leg ., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3664, which provided: "(b) An offense under this section is a felony of the third degree." This section was amended in 1997, and now provides: "(b) An offense under this section· is a Class A misdemeanor unless the person impersonated a peace officer, in which event it is a felony of the third degree." TEX.PEN.CODE ANN. § 37.11(b) (Vernon Supp.2000). LaFleur was, apparently, convicted and sentenced under the former statute.

2. TEX.GOV'T CODE ANN. § § 411.180(a)-(d) (Vernon Supp.2000).

3. TEX.GOV'T CODE ANN. § 411.180(e) (Vernon Supp.2000).

4. The court of appeals has jurisdiction over this appeal. *See Tune v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358 (Tex.2000).

moot. *See Blum v. Lanier,* 997 S.W.2d 259, 264 (Tex.1999). This exception to the mootness doctrine is referred to as "capable of repetition, yet evading review." It additionally requires that there be a reasonable expectation that the same action will occur again if the issue is not considered. Some courts of appeals in Texas have required that such reasonable expectation be with respect to the same complaining party. *See In re Cornyn,* 27 S.W.3d 327 (Tex.App.—Houston [1st Dist.] 2000, no pet. h.). The United States Supreme Court required two elements for this exception: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and (2) there should be a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

The Texas Supreme Court in the *Blum* decision did not refer to the second requirement set out by the United States Supreme Court in *Weinstein.* However, it did state, "Blum *or any other signatory to the petition*" could again be affected by the disputed conduct of the defendant. *Blum,* 997 S.W.2d at 264 (emphasis added). Because Blum was the only complaining party, the court's language suggested a recognition that the complained-of conduct could occur again with respect to other individuals who had signed the petition but who were not parties to the suit.

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1971), the United States Supreme Court addressed the question of mootness. The court stated that the usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, not simply at the date the action was initiated. However, the Court goes on to say that when a pregnancy is a significant fact in the litigation, the normal 266 day human gestational period is so short that the pregnancy will come to term before the usual appellate process is complete. Thus, an appellate process would be effectively denied. The Court stated, "Our law should not be that rigid.... Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.'" *Roe,* 410 U.S. at 125, 93 S.Ct. 705 (citations omitted). This doctrine might well be applied to the present case.

■ Another exception to the mootness doctrine has been addressed in Texas. This is called the "public interest" exception. This exception allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public, but for some reason evades appellate review. *See Univ. Interscholastic League v. Buchanan,* 848 S.W.2d 298 (Tex.App.—Austin 1993, no writ); *see also Nueces County v. Whitley Trucks, Inc.,* 865 S.W.2d 124 (Tex.App.—Corpus Christi 1993), *overruled on other grounds,* 886 S.W.2d 766 (Tex.1994).

■■ We believe that the present case falls within both of these categories. It is possible that future parties could find themselves in the same position as the DPS and LaFleur due to the expiration of a license prior to the completion of an appeal. It is also probable that this ruling would be of considerable public interest because of the large number of people licensed to carry guns in Texas.[5]

We conclude that in spite of the expiration of LaFleur's license, we should proceed to examine the merits of this case.

### *Issue on Appeal*

■ The sole issue raised by the DPS is whether the applicable statute permits the DPS to revoke a concealed handgun permit because of a conviction on a Class A

---

**5.** The court will take judicial notice of the statistics prepared by the Texas Department of Public Safety that as of October 2, 2000, there were 215,118 licenses currently active.

misdemeanor which occurs subsequent to the granting of the permit.

■ The Texas concealed handgun licensing statute is now found in Tex.Gov't Code Ann. §§ 411.171–411.205 (Vernon Supp.2000). Relevant to this appeal are the following sections:

Tex.Gov't Code Ann. § 411.186(a)(3):

(a) A license may be revoked under this section if the license holder:

. . . .

(3) subsequently becomes ineligible for a license under Section 411.172.

Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 10.01(a), 1997 Tex. Gen. Laws 404, *amended by*, Act of April 23, 1999, 76th Leg., R.S., ch. 62, § 9.09, 1999 Tex. Gen. Laws 317.

Tex.Gov't Code Ann. § 411.172(a)(8):

(a) A person is eligible for a license to carry a concealed handgun if the person:

. . . .

(8) has not, *in the five years preceding the date of application*, been convicted of a Class A or Class B misdemeanor or an offense under Section 42.01, Penal Code.

(Emphasis added).[6]

LaFleur argues that both the justice court and the county court at law correctly ruled in his favor, because LaFleur's conviction did not occur "in the five years preceding the date of application," but rather occurred *subsequent* to his application for a handgun permit, and, therefore, may not constitute a basis to revoke his permit. Both of the courts below did apply the literal language of the act. The act strictly speaks to the ineligibility of an applicant to obtain a license if a misde-

meanor conviction occurred during the five years preceding the date of the application. Thus, the language of the statute does not address such a conviction when it occurs after the application. However, we are required to ascertain the legislative intent of a statute.[7]

*Analysis*

■ Matters of statutory interpretation are questions of law, over which the appellate court exercises *de novo* review. *Texas Dep't of Pub. Safety v. Thomas*, 985 S.W.2d 567, 569 (Tex.App.—Waco 1998, no pet.). An appellate court's task when construing a statute is to determine the intent of the Legislature. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). This analysis begins with an examination of the plain and common meaning of the language itself. *Albertson's, Inc.*, 984 S.W.2d at 960; *Ex parte Evans*, 964 S.W.2d 643, 646 (Tex.Crim.App.1998). In the present case, there is no ambiguity. The language of the Act is clear. Where the application of such plain meaning would lead to an absurd result that the Legislature could not have possibly intended, however, the courts should not apply the statute literally and may consider other textual sources. *Texas Dep't of Pub. Safety*, 985 S.W.2d at 570; *see also* Tex. Gov't Code Ann. § 311.023 (Vernon 1998). Although such a role by the court sometimes leads to the contention that the courts are usurping the authority of the Legislature, we are bound by statute and precedent to consider the absurd-result doctrine.[8]

---

**6.** LaFleur's probated sentence constitutes a "conviction" for purposes of the relevant statute. Tex.Gov't Code Ann. § 411.171(4) (Vernon Supp.2000). *See Tune*, 23 S.W.3d 358.

**7.** Although it is the author's opinion that the best way to determine legislative intent is to look at the actual language of the statute, there are many other factors that affect interpretation. Legislative intent is, in a sense, a

legal fiction because it requires the courts to ascertain the intent of all of the voting members of the legislative body. There is no way to know what all members of the Legislature believed any given bill might mean.

**8.** In *Ex parte Copeland*, 130 Tex.Crim. 59, 63, 91 S.W.2d 700 (1936), Judge Christian determined that even though the Legislature had repealed the section of the criminal laws re-

It would be an absurd result to find that the Legislature made an applicant ineligible for committing certain misdemeanors, but once the applicant became a license holder, the applicant could commit numerous misdemeanors without those crimes affecting his eligibility to continue as a license holder. From the overall statute, we conclude that the legislative intent was to make a conviction for designated misdemeanors a part of the eligibility requirements to obtain and hold a handgun license. The five-year period must have been intended as a type of limitation barring how long such an offense could be used against an applicant. Nevertheless, the Legislature's overall intent could not have been to allow a person with a violation within the five-year period, or a violation committed while holding the permit, to be allowed to continue holding such a permit.

The judgment of the County Court at Law is reversed and rendered in favor of the Texas Department of Public Safety.

lating to sexual offenses, the Legislature could not have intended such actions: "To impute to the Legislature the intent to repeal the statutes defining incest, bigamy, seduction, adultery, and fornication is to lay at its door the charge of ignoring the moral sense of the people of this state and striking down some of the strongest safeguards of the home. That such was not the legislative intent is apparent from the enrolled bill."