NUMBER 13-06-313-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


C.J. HATTEN AND CRAIG HATTEN, Appellants, 


 v. 


UNIVERSITY INTERSCHOLASTIC LEAGUE

AND WILLIAM FARNEY, EXECUTIVE DIRECTOR, Appellees.

 


On appeal from the 261st District Court 

of Travis County, Texas.


 


MEMORANDUM OPINION



Before Justices Garza, Benavides and Vela


Memorandum Opinion by Justice Vela



 Appellants, C.J. Hatten, Jr. and Mathew Hatten, by and through Marion Craig
Hatten and Kim Hatten, appeal from a judgment denying their request for declaratory
and injunctive relief to restrain the University Interscholastic League and its executive
director, William Farney (collectively, "UIL"), from enforcing its decision that C.J. and
Mathew were ineligible to play high-school athletics for Pilot Point I.S.D. because they
had changed schools for athletic purposes. The trial court issued temporary restraining
orders and later temporary injunctions barring the UIL from enforcing its decision. 
After a bench trial on the merits, the trial court denied all relief. Appellants raise four
issues for our consideration. We dismiss the appeal as moot.

I. Background


 As a part of the University of Texas at Austin, (1) the UIL is a voluntary
organization composed of representatives of Texas school districts and regulates the
competitive athletics of junior and senior high-school student athletes in Texas. (2) This
case involves the enforcement of UIL Rule 443c (the "athletic-purposes rule") which
states: "A student who changes schools for athletic purposes is not eligible to
compete in varsity league athletic contest(s) at the school to which he or she moves
for at least one calendar year, even if both parents move to the new school district
attendance zone."

 Craig and Kim Hatten lived in Celina, Texas with their four children, including
C.J. and Mathew. During the 2002-2003 school year, C.J. and Mathew participated
in athletic events at their high school in the Celina I.S.D. At some point, the Hattens'
children experienced behavioral problems, and Craig and Kim separated. In February
2003, Craig Hatten complained to a Celina I.S.D. coach about the Celina coaches'
method of disciplining Mathew. In March 2003, the Hatten family moved from Celina
to Pilot Point, Texas. In order to participate in athletics in the Pilot Point I.S.D., C.J.
and Matthew had to receive approval from Celina I.S.D. that their move to Pilot Point
was not for athletic purposes. The Celina athletic director determined that the move
was for athletic purposes. 

 The UIL district executive committee determined that C.J. and Mathew changed
schools for athletic purposes and were, therefore, ineligible to participate in UIL
competition at their new school. The suspension period was from March 28, 2003
until March 27, 2004. The Hattens appealed to the UIL state executive committee,
which affirmed the decision. In October 2003, the Hattens filed suit in Travis County
district court, seeking a declaration that they have a due-process interest under the
Texas Constitution because of the stigmatizing effect of the UIL's actions and, in turn,
have been deprived of the full evidentiary hearing to which they are entitled. The
district court issued temporary restraining orders and later temporary injunctions,
which allowed C.J. and Mathew to play varsity sports despite the UIL's ruling that
they were ineligible, and both students played varsity sports during their year of
alleged ineligibility. After a bench trial on the merits, the district court entered a final
judgment, denying the declaratory and injunctive relief sought by appellants, declaring
that the decisions of the UIL were supported by substantial evidence, dissolving the
temporary injunctions, and denying attorneys fees to all parties.

II. Subject-Matter Jurisdiction


 In its appellees' brief, the UIL argues the case is moot because C.J.'s senior year
is over, and Mathew's year of ineligibility has expired. Thus, before reaching the
merits, we must determine whether there is a live controversy to be resolved, or
whether the matter has now become moot and unreviewable. Mootness is a
component of subject-matter jurisdiction. Krohn v. Marcus Cable Assocs, L.P., 201
S.W.3d 876, 882 (Tex. App.-Waco 2006, pet. denied); Labrado v. County of El Paso,
132 S.W.3d 581, 589 (Tex. App.-El Paso 2004, no pet.); accord Williams v. Lara, 52
S.W.3d 171, 185 (Tex. 2001). A case becomes moot if a controversy no longer
exists or the parties lack a legally cognizable interest in the outcome. Allstate Ins. Co.
v. Hallman, 159 S.W.3d 640, 642 (Tex. 2005); FDIC v. Nueces County, 886 S.W.2d
766, 767 (Tex. 1994) (citing Camarena v. Tex. Employment Comm'n, 754 S.W.2d
149, 151 (Tex. 1988)). "An appeal is moot when a court's action on the merits
cannot affect the rights of the parties." Zipp v. Wuemling, 218 S.W.3d 71, 73 (Tex.
2007) (per curiam) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex.
1993)). When a case becomes moot, the parties lose standing to maintain their
claims. City of McAllen v. McAllen Police Officers Union, 221 S.W.3d 885, 895-96
(Tex. App.-Corpus Christi 2007, pet. denied) (citing Williams, 52 S.W.3d at 184). 

 The holding in University Interscholastic League v. Jones, 715 S.W.2d 759
(Tex. App.-Dallas 1986, writ ref'd n.r.e.) is helpful in determining the mootness issue
in this case. Gregory Jones, a junior at Irving MacArthur High School and a player on
the school's football team, moved from Irving to Highland Park. Id. at 760. The UIL
determined that he had moved for athletic purposes and that he was therefore barred
from playing football his senior year at Highland Park. Id. Jones sued to void the
UIL's actions and to enjoin it from preventing him from playing football at Highland
Park or from penalizing Highland Park for allowing him to play. Id. The trial court
granted the injunctive relief, allowing him to play football at Highland Park, and he later
graduated from high school. Id. The UIL appealed, and without reaching the merits,
the court stated: "Because of the injunction, Jones was allowed to play football at
Highland Park. Jones played the 1985 football season and he has since graduated. 
Therefore, the question of the impropriety of the trial court's action is now moot." Id. 

 Here, because C.J.'s and Mathew's period of ineligibility has expired, and
because C.J. has graduated, this appeal is now moot. See id., at 760-61; Tex. Educ.
Agency v. Dallas Indep. Sch. Dist., 797 S.W.2d 367, 369 (Tex. App.-Austin 1990,
no writ) (court determined appeal was moot because the football season had ended);
Fink v. Hinson, 243 Ga. 337, 253 S.E.2d 757, 758 (1979) (holding that the validity
of injunctive relief sought by students was mooted by football season's end). 
Accordingly, the issue of whether C.J. and Mathew moved to Pilot Point for athletic
purposes is now moot.

 III. Exceptions to the Mootness Doctrine 


 Appellants argue that the exceptions to the mootness doctrine apply here. The
Texas Supreme Court has recognized only two exceptions to the mootness doctrine: 
(1) the capable of repetition, yet evading review exception; and (2) the collateral-consequences exception. FDIC, 886 S.W.2d at 767; Gen. Land Office v. Oxy U.S.A.,
Inc., 789 S.W.2d 569, 571 (Tex. 1990).

A. The Capable of Repetition, Yet Evading Review Exception

 This exception applies only in rare circumstances. Williams, 52 S.W.3d at 184
(citing Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)). To invoke the exception, "a
plaintiff must prove that: (1) the challenged action was too short in duration to be
litigated fully before the action ceased or expired; and (2) a reasonable expectation
exists that the same complaining party will be subjected to the same action again." 
City of McAllen, 221 S.W.3d at 896 (citing Williams, 52 S.W.3d at 184). Appellants
cite no Texas cases applying this exception to a fact situation similar to the case
before us.

 Litigants have used this exception to challenge unconstitutional mental
commitments after the complaining party's release, see, e.g., State v. Lodge, 608
S.W.2d 910 (Tex.1980); Ex parte Ullmann, 616 S.W.2d 278 (Tex. App.-San Antonio
1981, writ dism'd); unconstitutional adjudications of juvenile delinquency, Carrillo v.
State, 480 S.W.2d 612, 616-17 (Tex. 1972); and unconstitutional prior restraints on
speech. Iranian Muslim Org. v. City of San Antonio, 615 S.W.2d 202, 209 (Tex.
1981). In each case, the exception was used to preserve appellate review of
government conduct that violated constitutional rights. However, the Texas Supreme
Court has repeatedly held that participation in extracurricular activities is not a
fundamental right. See In re Univ. Interscholastic League, 20 S.W.3d 690, 692 (Tex.
2000) (orig. proceeding); Eanes Indep. Sch. Dist. v. Logue, 712 S.W.2d 741, 742
(Tex. 1986); Spring Branch Indep. Sch. Dist. v. Starnos, 695 S.W.2d 556, 559 (Tex.
1985).

 Furthermore, appellants have not shown that a reasonable expectation exists
that the UIL will once again subject either C.J. or Mathew to the athletic-purposes rule. 
Consequently, appellants have failed to prove the second element of the capable of
repetition, yet evading review exception to the mootness doctrine. See Williams, 52
S.W.3d at 184.

B. The Collateral-Consequences Exception

 This exception is invoked only under narrow circumstances when vacating the
underlying judgment will not cure the adverse consequences suffered by the party
seeking to appeal that judgment. Marshall v. Housing Auth. of San Antonio, 198
S.W.3d 782, 789 (Tex. 2006). To invoke this exception, a party must show both that
(1) a concrete disadvantage resulted from the judgment and (2) the disadvantage will
persist even if the judgment is vacated and the case is dismissed as moot. Id. See
Spencer v. Kemna, 523 U.S. 1, 8 (1998); Gen. Land Office, 789 S.W.2d at 571
(noting that the collateral-consequences exception is invoked only when prejudicial
events have occurred whose effects will continue to stigmatize after the case is moot).

 The Texas Supreme Court has determined that the effects of an order for
temporary inpatient mental-health services continued to stigmatize the subject of the
order even though the commitment order had expired on its own terms; Lodge, 608
S.W.2d at 912; see also Campbell v. State, 68 S.W.3d 747, 753-54 (Tex.
App.-Houston [14th Dist.] 2001), aff'd, 85 S.W.3d 176 (Tex. 2002) (applying Lodge
to order for extended mental-health services) and that the effects of a juvenile-delinquency adjudication continued to stigmatize the person adjudicated even though
the person had served his sentence and had reached the age of majority. Carrillo, 480
S.W.2d at 616-18. Texas intermediate appellate courts have determined that the
effects of a protective order carry significant collateral legal repercussions and a social
stigma even though the protective order has expired, see In re Salgado, 53 S.W.3d
752, 757-58 (Tex. App.-El Paso 2001, no pet.) (orig. proceeding); James v. Hubbard,
21 S.W.3d 558, 560-61 (Tex. App.-San Antonio 2000, no pet.); In re Cummings, 13
S.W.3d 472, 475 (Tex. App.-Corpus Christi 2000, no pet.), and that the subject of
a contempt order in a child-support proceeding may still suffer collateral consequences
after his release from custody. In re M.E.G., 48 S.W.3d 204, 208 n.5 (Tex.
App.-Corpus Christi 2000, no pet.); Ex parte Young, 724 S.W.2d 423, 425 (Tex.
App.-Beaumont 1987, orig. proceeding) (per curiam).

 The consequences of the UIL's attempt to prevent C.J. and Mathew from
participating in high-school athletics at Pilot Point I.S.D. were minuscule when
compared to the stigmatizing consequences inherent in involuntary mental
commitments, juvenile adjudications, protective orders, and contempt orders. 
Appellants have not shown that a concrete disadvantage resulted from the trial court's
final judgment and that the disadvantage will persist even if we vacate the judgment
and dismiss the case as moot. Accordingly, the collateral-consequences exception
does not apply to this case.

C. The Public-Interest Exception

 The public-interest exception permits judicial review of questions of (1)
"considerable public importance" (2) if the nature of the action makes it capable of
repetition and yet prevents effective judicial review. FDIC, 886 S.W.2d at 767; In re
Guardianship of Keller, 171 S.W.3d 498, 501 (Tex. App.-Waco 2005), rev'd sub
nom., Zipp v. Wuemling, 218 S.W.3d 71 (Tex. 2007) (per curiam); Ngo v. Ngo, 133
S.W.3d 688, 692 (Tex. App.-Corpus Christi 2003, no pet.). In FDIC, the Texas
Supreme Court said that a common element of both the public-interest exception and
the capable of repetition, yet evading review exception is that the complained-of action
be capable of repetition yet not effectively reviewable. Id. at 767. An issue does not
evade appellate review if appellate courts have addressed the issue on the merits. See
id.; Ngo, 133 S.W.3d at 692. At this time, the Texas Supreme Court has as yet not
recognized the public-interest exception. (3)

 In Nueces County v. Whitley Trucks, Inc., 865 S.W.2d 124 (Tex. App.-Corpus
Christi, 1993), (4) rev'd sub nom., FDIC v. Nueces County, 886 S.W.2d 766 (Tex.
1994), (5) we recognized the public-interest exception, stating: "[T]he present questions
concerning the attachment and priority of, and ability to foreclose upon, tax liens when
the FDIC holds a lien against the same property in its capacity as a receiver is of
considerable public importance. . . ." Id. at 126.

 The Texarkana Court of Appeals has also recognized the public-interest
exception. The court has said that for this exception to apply, evidence must show
that the controversy is of considerable public importance. See Fiske v. City of Dallas,
220 S.W.3d 547, 550 (Tex. App.-Texarkana 2007, no pet.); (6) Tex. Dept. of Public
Safety v. LaFleur, 32 S.W.3d 911, 914 (Tex. App.-Texarkana 2000, no pet.); (7) but
see Securtec, Inc. v. County of Gregg, 106 S.W.3d 803, 810-11 (Tex.
App.-Texarkana 2003, pet. denied) (court reviewed the merits pursuant to the public-interest exception, stating: "This case is . . . a matter of public interest because Gregg
County is a governmental body that is required to follow the Texas Local Government
Code when accepting bids for construction contracts. . . .").

 Neither party has cited nor have we found any cases applying the public-interest
exception to the UIL's athletic-purposes rule. In University Interscholastic League v.
Buchanan, 848 S.W.2d 298 (Tex. App.-Austin1993, no writ), the court reviewed the
application of the UIL's "over-19 rule" (8) pursuant to the public-interest exception. Id.
at 304. In that case, two students, each of whom attended high school in different
districts, obtained a final judgment, enjoining enforcement of the UIL's over-19 rule
and its mandatory-forfeiture rule. Id. at 301, 303. This relief allowed them to
participate in the 1991 football season. Id. at 300-01. The UIL appealed, and both
students argued the appeal was moot because the 1991 football season had ended
and they had graduated. Id. at 303-04. The court distinguished this case from cases
holding that the appeals were moot either because the football eligibility of the
students had expired (9) or because the student had graduated from high school, (10)
stating: "[T]he school districts, which are parties to this appeal, have a direct interest
in the continued viability of the district court judgment to prevent the UIL from
enforcing the mandatory forfeiture rule. Therefore, . . . we have decided to review the
case pursuant to a 'public interest exception' to the mootness doctrine, . . . ." Id. at
304 (citation omitted).

 The facts in Buchanan are distinguishable from the facts in this case. Here,
neither Celina I.S.D. nor Pilot Point I.S.D. are parties to this appeal, and neither school
district claims a direct interest in the continued viability of the judgment to prevent the
UIL from enforcing the mandatory-forfeiture rule. Thus, even though Buchanan
concerned the application of a UIL rule, it does not control the disposition of this
cause. 

 The instant cause is akin to Texas Education Agency v. Dallas Independent
School District, 797 S.W.2d 367 (Tex. App.-Austin 1990, no writ), which involved
the application of the "no-pass, no-play" law. Id. at 368. In that case, the state
commissioner of education concluded that Carter High School ("CHS"), a school within
the Dallas I.S.D., had used a football player who was ineligible under the "no-pass, no-play" law and declared the entire CHS football team ineligible. Id. As a result, Dallas
I.S.D. sued the UIL and other defendants, seeking an order enjoining them from
interfering with CHS's participation in the 1988 championship. Id. The trial court
entered a permanent injunction prohibiting the defendants from disqualifying CHS from
"'the rights and privileges associated with participation in the 1988 University
Interscholastic League Class 5-A state football championship.'" Id. The appellate
court stated that because the 1988 championship had passed, the appeal was moot. 
Id. at 369. The court further stated that neither the capable of repetition, yet evading
review exception nor the collateral-consequences exception applied. Id.

 Here, the evidence does not show that the athletic-purposes rule is more
important than the "no-pass, no-play" law, see Tex. Educ. Agency, 797 S.W.2d at
369, or that the rule has the same "considerable public importance" as the attachment
and priority of, and ability to foreclose upon, tax liens when the FDIC holds a lien
against the same property in its capacity as a receiver, See Whitley Trucks, 865
S.W.2d at 126; a county's acceptance of bids for construction contracts, Securtec,
106 S.W.3d at 811; or revocation of a person's concealed handgun license. LaFleur,
32 S.W.3d at 914. We hold, therefore, that the public-interest exception to the
mootness doctrine does not apply to this case.

IV. Conclusion


 When a cause becomes moot, an appellate court must dismiss the cause, not
just the appeal. City of Garland v. Louton, 691 S.W.2d 603, 605 (Tex. 1985);
Brownsville Indep. Sch. Dist. Bd. of Trs. v. Brownsville Herald, 831 S.W.2d 537, 539
(Tex. App.-Corpus Christi 1992, no writ). Thus, we assess costs against the party
incurring them, vacate the judgment, and dismiss the cause. Brownsville Herald, 831
S.W.2d at 539. See Tex. Dept. of Health v. Long, 659 S.W.2d 158, 161 (Tex.
App.-Austin 1983, no writ).

 The cause is dismissed as moot. 

 

 

 

 ROSE VELA

 Justice


Memorandum Opinion delivered and 

filed this 27th day of September, 2007.
1. See Tex. Educ. Code Ann. § 33.083(b) (Vernon 2006).
2. See Univ. Interscholastic League v. Buchanan, 848 S.W.2d 298, 300 (Tex. App.-Austin 1993,
no writ).
3. FDIC v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994); Houston Chronicle Publ'g Co. v.
Thomas, 196 S.W.3d 396, 400 (Tex. App.-Houston [1st Dist.] 2006, no pet.).
4. Nueces County and Robstown I.S.D. (the taxing authorities) sued Whitley Trucks to collect
property taxes and to foreclose a tax lien on Whitley's real property. Id. at 125. The taxing authorities
also sued the FDIC because it held a mortgage lien on the property. Id. The FDIC contended its lien
was "property" under section 1825(b)(2) of the Financial Institutions Reform, Recovery, and
Enforcement Act (FIRREA) and argued that the taxing authorities were thus prohibited from foreclosing
on the property without its consent. Id. The trial court rendered summary judgment against Whitley,
and while the case was on appeal, the FDIC foreclosed its lien and bought the property. 
5. The Texas Supreme Court stated: "Even if we were to recognize a public interest exception
to the mootness doctrine, this case does not meet the suggested requirements. Whether liens are
property within the meaning of section 1825(b)(2) [of FIRREA] does not evade appellate review. . . ." 
Id. at 767.
6. In Fiske, Frieda Fiske, a former Dallas municipal judge, sued the City of Dallas seeking
reinstatement to her job as a city judge. She alleged that the actions of the city's Judicial Nominating
Commission which failed to recommend her for appointment to a new term, were void because the
commission violated provisions of the Texas Open Meetings Act ("TOMA"). The trial court granted
summary judgment for the city, and Fiske appealed. The appellate court stated that the public-interest
exception did not apply "because it requires that the controversy involve a question of considerable
public importance. There is no summary judgment evidence that the status of Fiske as a result of
alleged violations of the TOMA by a judicial nominating commission is a question of considerable public
importance." Id. at 550.
7. In LaFleur, the DPS tried to revoke LaFleur's concealed-handgun license following his
misdemeanor conviction. The trial court ruled in his favor, and the DPS appealed. On appeal, LaFleur
argued that the issue was moot because his license had expired. The appellate court noted that because
Lafleur had not reapplied for a license, there was no existing justiciable controversy. However, in spite
of the expiration of his license, the court examined the merits of the case pursuant to the public-interest
exception, stating, "It is . . . probable that this ruling would be of considerable public interest because
of the large number of people licensed to carry guns in Texas." Id. at 914. The court took judicial
notice of the DPS's statistics that there were 215,118 active concealed-handgun licenses.
8. This rule stated, in relevant part: "Subject to the other sections of this subchapter, an individual
is eligible to participate in a League varsity contest as a representative of a participant school if that
individual . . . is less than 19 years old on September 1 preceding the contest. . . ." The UIL permitted
no exception to or waiver of the over-19 rule based on special circumstances of individual students.
9. Tex. Educ. Agency v. Dallas Indep. Sch. Dist., 797 S.W.2d 367, 369 (Tex. App.-Austin 1990,
no writ).
10. Spring Branch I.S.D. v. Reynolds, 764 S.W.2d 16, 18 (Tex. App.-Houston [1st Dist.] 1988,
no writ).