ACCEPTED
03-15-00007-CV
5200189
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 4:22:41 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00007-CV

_____

### IN THE THIRD COURT OF APPEALS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 4:22:41 PM
JEFFREY D. KYLE
Clerk

_____

### JOHN DOE
*Appellant*

### V.

### BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS, COMMISSION FOR LAWYER DISCIPLINE; AND LINDA ACEVEDO, IN HER OFFICIAL CAPACITY AS THE CHIEF DISCIPLINARY COUNSEL OF THE STATE BAR OF TEXAS
*Appellees*

_____

On Appeal from the 126th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-14-001635

_____

### APPELLANT'S UNOPPOSED MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

_____

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000

GAINES WEST
State Bar No. 21197500
gaines.west@westwebblaw.com

JENNIFER D. JASPER
State Bar No. 24027026
jennifer.jasper@westwebblaw.com

ROB GEORGE
State Bar No. 24067623
rob.george@westwebblaw.com

### ORAL ARGUMENT REQUESTED

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellant, John Doe, files the following Motion for Leave to File Supplemental Brief. On May 7, 2015, after reviewing the Texas Rules of Appellate Procedure and the Court's Local Rules, John Doe filed Appellant's Supplemental Brief, without filing a motion for leave. *See* TEX. R. APP. P. 38.7; THIRD COURT OF APPEALS LOCAL RULE ("LOCAL RULE") 58.

Local Rule 58 instructs parties to file motions for leave when filing supplements to "post-submission briefs." LOCAL RULE 58. Appellant misunderstood "post-submission briefs" to mean those briefs filed subsequent to the case being submitted to the Court for an opinion, *i.e.* submission on the briefs after the parties have each filed their opening briefs, or submission on oral argument. *See, e.g.*, LOCAL RULE 2 (noting the time for oral "submission" of causes). However, after a conversation with opposing counsel, who stated that she is unopposed to this motion, and after a conversation with the Court's clerk, Appellant now files this Motion for Leave. Appellant moves the Court for leave to file the Supplemental Brief he filed with the Court on May 7, 2015, a copy of which is attached at Appendix 1.

In the interest of justice, and to aid the Court in its consideration of this appeal, the Court should grant leave to file Appellant's Supplemental Brief. Consistently throughout the underlying Disciplinary Proceedings and during the

course of the declaratory judgment action arising therefrom, Appellees have maintained that Texas Rule of Disciplinary Procedure applies to bar Appellant from receiving a copy of the Chief Disciplinary Counsel's ("CDC") recommendation to the Summary Disposition Panel. Through his Appellant's Supplemental Brief, John Doe provides additional support for his position that Texas Rule of Disciplinary Procedure ("Rule") 2.16 does not apply to keep Disciplinary Proceedings confidential from the complainant. *See* TEX. R. DISCIPLINARY P. 2.16. This Supplemental Brief specifically supplements Doe's arguments in C.2., beginning on page 9 of his Appellant's Brief, entitled "Mootness."

Whether Texas Disciplinary Rule of Procedure 2.16 bars a complainant, usually a member of the public, like Doe, from receiving a copy of the CDC's recommendation is of considerable public importance and affects the transparency of the Disciplinary Proceedings to the member of the public whose grievance began the whole process. Considering Appellant's Supplemental Brief will assist the Court in its review of the scope of that rule. Therefore, the Court should grant leave to file Appellant's Supplemental Brief.

[*This space intentionally left blank.*]

## PRAYER

Appellant John Doe prays that this Court grant this Unopposed Motion to Leave to File Supplemental Brief, and, after hearing oral argument, reverse the trial court's dismissal and remand this case for further proceedings.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone:  (979) 694-7000
Facsimile:   (979) 694-8000

By: /s Gaines West
    GAINES WEST
    State Bar No. 21197500
    gaines.west@westwebblaw.com

    JENNIFER D. JASPER
    State Bar No. 24027026
    jennifer.jasper@westwebblaw.com

    ROB GEORGE
    State Bar No. 24067623
    rob.george@westwebblaw.com

## CERTIFICATE OF CONFERENCE

On May 7, 2015, the undersigned conferred with Cynthia Hamilton, counsel for Appellee, about the merits of the foregoing motion and Ms. Hamilton stated that she is unopposed to this Unopposed Motion for Leave to File Supplemental Brief.

/s Gaines West
Gaines West

## CERTIFICATE OF SERVICE

On May 7, 2015, the undersigned certifies that he served a copy of **APPELLANT'S SUPPLEMENTAL BRIEF** on the following in the manner listed below, in compliance with Texas Rules of Appellate Procedure 9.5 and 25.1(e):

Cynthia Canfield Hamilton
Senior Appellate Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
P.O. Box 12487
Austin, Texas 78711

Via email: chamilton@texasbar.com
Via E-file Notification
and Certified Mail, RRR

Paul Homburg
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
711 Navarro, Suite 750
San Antonio, Texas 78205

Via email: phomburg@texasbar.com
Via E-file Notification
and Certified Mail, RRR

Rebecca Stevens
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
P. O. Box 12487
Austin, Texas 78711-2487

Via email: bstevens@texasbar.com
Via E-file Notification
and Certified Mail, RRR

/s Gaines West
Gaines West

**NO. 03-15-00007-CV**

_____

*IN THE THIRD COURT OF APPEALS*
*AUSTIN, TEXAS*

_____

**JOHN DOE**
*Appellant*

**V.**

**BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS,
COMMISSION FOR LAWYER DISCIPLINE; AND LINDA ACEVEDO, IN
HER OFFICIAL CAPACITY AS THE CHIEF DISCIPLINARY COUNSEL
OF THE STATE BAR OF TEXAS**

*Appellees*

_____

On Appeal from the 126th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-14-001635

_____

**APPENDIX 1
TO
APPELLANT'S UNOPPOSED MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF**

_____

**WEST, WEBB, ALLBRITTON & GENTRY,
P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000

GAINES WEST
State Bar No. 21197500
gaines.west@westwebblaw.com

JENNIFER D. JASPER
State Bar No. 24027026
jennifer.jasper@westwebblaw.com

ROB GEORGE
State Bar No. 24067623
rob.george@westwebblaw.com

**ORAL ARGUMENT REQUESTED**

ACCEPTED
03-15-00007-CV
5188781
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 10:42:58 AM
JEFFREY D. KYLE
CLERK

NO. 03-15-00007-CV

_____

*IN THE THIRD COURT OF APPEALS*
*AUSTIN, TEXAS*

_____

**JOHN DOE**
*Appellant*


**V.**

**BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS,
COMMISSION FOR LAWYER DISCIPLINE; AND LINDA ACEVEDO, IN
HER OFFICIAL CAPACITY AS THE CHIEF DISCIPLINARY COUNSEL
OF THE STATE BAR OF TEXAS**
*Appellees*

_____

On Appeal from the 126th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-14-001635

_____

**APPELLANT'S SUPPLEMENTAL BRIEF**

_____

<table>
<tr><td>

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000

</td><td>

GAINES WEST
State Bar No. 21197500
gaines.west@westwebblaw.com

JENNIFER D. JASPER
State Bar No. 24027026
jennifer.jasper@westwebblaw.com

ROB GEORGE
State Bar No. 24067623
rob.george@westwebblaw.com

</td></tr>
</table>

**ORAL ARGUMENT REQUESTED**

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellant, John Doe, files the following Supplemental Brief to provide additional support for his position that Texas Rule of Disciplinary Procedure ("Rule") 2.16 does <u>not</u> apply to keep Disciplinary Proceedings confidential from the complainant. *See* TEX. R. DISCIPLINARY P. 2.16. This Supplemental Brief specifically supplements Doe's arguments in C.2., beginning on page 9 of his Appellant's Brief, entitled "Mootness."

Appellee, the Chief Disciplinary Counsel ("CDC"), maintains that her *ex parte* recommendation to the Summary Disposition Panel regarding Doe's grievance cannot be shared with Doe, the complainant, pursuant to Rule 2.16, which generally provides for confidentiality in Disciplinary Proceedings. *See id.* However, as John Doe has argued in this proceeding, Rule 2.16 simply cannot be construed to apply *to the complainant himself*. In further support of his position regarding Rule 2.16, Appellant would show:

The Texas Rules of Disciplinary Procedure expressly define the scope of "Disciplinary Proceedings" as follows: "'Disciplinary Proceedings' include[ ] the processing of a Grievance, the investigation and processing of an Inquiry or Complaint, presentation of a Complaint before a Summary Disposition Panel, and the proceeding before an Evidentiary Panel." *Id.* R. 1.06L. Furthermore, the Texas Government Code expressly gives a complainant the right to be present at

"all hearings at which testimony is taken," which includes Evidentiary Panel proceedings—a type of Disciplinary Proceeding. TEX. GOV'T CODE ANN. § 81.072(b)(10); *see* TEX. R. DISCIPLINARY P. 1.06L, 2.16.

These two provisions, when taken together, demonstrate that a complainant actually has a right to be present during a particular portion of the Disciplinary Proceeding (the evidentiary hearing), and in fact, the CDC asserts this position in its Evidentiary Panel proceedings. The CDC's interpretation that Rule 2.16 makes Disciplinary Proceedings confidential from the complainant cannot stand, in light of the fact that Disciplinary Proceedings include Evidentiary Panels, before which the complainant has an express right to appear.

In the absence of a court ruling articulating that 2.16 does not require Disciplinary Proceedings be kept confidential from the complainant, the CDC (Appellee in this case) will continue to incorrectly rely on Rule 2.16 to incorrectly justify its refusals to disclose its recommendations to complainants (similarly situated to Doe) when making its recommendation to the Summary Disposition Panel. And the Summary Disposition Panel will continue to rule on the CDC's recommendations before a court can intervene, thereby prohibiting review of the CDC's *ex parte* recommendation and "no just cause" finding. Thus, this case satisfies the "public interest exception" to the mootness doctrine, and the trial court had jurisdiction to hear the pending declaratory judgment action. *See Univ.*

*Scholastic League v. Buchanan*, 848 S.W.2d 298, 204 (Tex. App.—Austin 1993, no writ).

## PRAYER

Appellant John Doe prays that this Court reverse the trial court's dismissal and remand this case for further proceedings.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By: /s Gaines West
    GAINES WEST
    State Bar No. 21197500
    gaines.west@westwebblaw.com

    JENNIFER D. JASPER
    State Bar No. 24027026
    jennifer.jasper@westwebblaw.com

    ROB GEORGE
    State Bar No. 24067623
    rob.george@westwebblaw.com

## CERTIFICATE OF COMPLIANCE

I certify that this **APPELLANT'S SUPPLEMENTAL BRIEF** complies with the typeface and word-count requirement set forth in the Rules of Appellate Procedure. This motion has been prepared, using Microsoft Word, in 14-point Times New Roman font for the text and 12-point Times New Roman font for any footnotes. This motion contains 466 words, as determined by the word count feature of the word processing program used to prepare this document, excluding those portions of the notice exempted by TEX. R. APP. P. 9.4(i)(1).

/s Gaines West
Gaines West

## CERTIFICATE OF SERVICE

On May 7, 2015, the undersigned certifies that he served a copy of **APPELLANT'S SUPPLEMENTAL BRIEF** on the following in the manner listed below, in compliance with Texas Rules of Appellate Procedure 9.5 and 25.1(e):

Cynthia Canfield Hamilton
Senior Appellate Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
P.O. Box 12487
Austin, Texas 78711

Via email: chamilton@texasbar.com
Via E-file Notification
and Certified Mail, RRR

Paul Homburg
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
711 Navarro, Suite 750
San Antonio, Texas 78205

Via email: phomburg@texasbar.com
Via E-file Notification
and Certified Mail, RRR

Rebecca Stevens
Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
P. O. Box 12487
Austin, Texas 78711-2487

Via email: bstevens@texasbar.com
Via E-file Notification
and Certified Mail, RRR

/s Gaines West
Gaines West

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          a-1. Rules of Disciplinary Procedure (Refs & Annos)
            Part I. General Rules

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 1.06

1.06. Definitions

Currentness

A. "Address" means the registered address provided by the attorney who is the subject of the Grievance, as that address is shown on the membership rolls maintained by the State Bar on behalf of the Clerk of the Supreme Court at the time of receipt of the Grievance by the Chief Disciplinary Counsel.

B. "Board" means the Board of Directors of the State Bar of Texas.

C. "Chief Disciplinary Counsel" means the person serving as Chief Disciplinary Counsel and any and all of his or her assistants.

D. "Commission" means the Commission for Lawyer Discipline, a permanent committee of the State Bar of Texas.

E. "Committee" means any of the grievance committees within a single District.

F. "Complainant" means the person, firm, corporation, or other entity, including the Chief Disciplinary Counsel, initiating a Complaint or Inquiry.

G. "Complaint" means those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct.

H. "Director" means a member of the Board of Directors of the State Bar of Texas.

I. "Disability" means any physical, mental, or emotional condition that, with or without a substantive rule violation, results in the attorney's inability to practice law, provide client services, complete contracts of employment, or otherwise carry out his or her professional responsibilities to clients, courts, the profession, or the public.

J. "Disciplinary Action" means a proceeding brought by or against an attorney in a district court or any judicial proceeding covered by these rules other than an Evidentiary Hearing.

K. "Disciplinary Petition" means a pleading that satisfies the requirements of Rule 3.01.

L. "Disciplinary Proceedings" includes the processing of a Grievance, the investigation and processing of an Inquiry or Complaint, presentation of a Complaint before a Summary Disposition Panel, and the proceeding before an Evidentiary Panel.

M. "District" means disciplinary district.

N. "Evidentiary Hearing" means an adjudicatory proceeding before a panel of a grievance committee.

O. "Evidentiary Panel" means a panel of the District Grievance Committee performing an adjudicatory function other than that of a Summary Disposition Panel with regard to a Disciplinary Proceeding pending before the District Grievance Committee of which the Evidentiary Panel is a subcommittee.

P. "Evidentiary Petition" means a pleading that satisfies the requirements of Rule 2.17.

Q. "General Counsel" means the General Counsel of the State Bar of Texas and any and all of his or her assistants.

R. "Grievance" means a written statement, from whatever source, apparently intended to allege Professional Misconduct by a lawyer, or lawyer Disability, or both, received by the Office of the Chief Disciplinary Counsel.

S. "Inquiry" means any written matter concerning attorney conduct received by the Office of the Chief Disciplinary Counsel that, even if true, does not allege Professional Misconduct or Disability.

T. "Intentional Crime" means (1) any Serious Crime that requires proof of knowledge or intent as an essential element or (2) any crime involving misapplication of money or other property held as a fiduciary.

U. "Just Cause" means such cause as is found to exist upon a reasonable inquiry that would induce a reasonably intelligent and prudent person to believe that an attorney either has committed an act or acts of Professional Misconduct requiring that a Sanction be imposed, or suffers from a Disability that requires either suspension as an attorney licensed to practice law in the State of Texas or probation.

V. "Penal Institution" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

W. "Professional Misconduct" includes:

   1. Acts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct.

2. Attorney conduct that occurs in another state or in the District of Columbia and results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the Texas Disciplinary Rules of Professional Conduct.

3. Violation of any disciplinary or disability order or judgment.

4. Engaging in conduct that constitutes barratry as defined by the law of this state.

5. Failure to comply with Rule 13.01 of these rules relating to notification of an attorney's cessation of practice.

6. Engaging in the practice of law either during a period of suspension or when on inactive status.

7. Conviction of a Serious Crime, or being placed on probation for a Serious Crime with or without an adjudication of guilt.

8. Conviction of an Intentional Crime, or being placed on probation for an Intentional Crime with or without an adjudication of guilt.

X. "Reasonable Attorneys' Fees," for purposes of these rules only, means a reasonable fee for a competent private attorney, under the circumstances. Relevant factors that may be considered in determining the reasonableness of a fee include but are not limited to the following:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The fee customarily charged in the locality for similar legal services;

3. The amount involved and the results obtained;

4. The time limitations imposed by the circumstances; and

5. The experience, reputation, and ability of the lawyer or lawyers performing the services.

Y. "Respondent" means any attorney who is the subject of a Grievance, Complaint, Disciplinary Proceeding, or Disciplinary Action.

Z. "Sanction" means any of the following:

1. Disbarment.

2. Resignation in lieu of discipline.

3. Indefinite Disability Suspension.

4. Suspension for a term certain.

5. Probation of suspension, which probation may be concurrent with the period of suspension, upon such reasonable terms as are appropriate under the circumstances.

6. Interim suspension.

7. Public reprimand.

8. Private reprimand.

The term "Sanction" may include the following additional ancillary requirements.

a. Restitution (which may include repayment to the Client Security Fund of the State Bar of any payments made by reason of Respondent's Professional Misconduct); and

b. Payment of Reasonable Attorneys' Fees and all direct expenses associated with the proceedings.

AA. "Serious Crime" means barratry; and felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes.

BB. "State Bar" means the State Bar of Texas.

CC. "Summary Disposition Panel" means a panel of the Committee that determines whether a Complaint should proceed or should be dismissed based upon the absence of evidence to support a finding of Just Cause after a reasonable investigation by the Chief Disciplinary Counsel of the allegations in the Grievance.

DD. "Wrongfully Imprisoned Person" has the meaning assigned by Section 501.101, Government Code.

**Credits**
Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Amended by orders of Dec. 29, 2003, eff. Jan. 1, 2004; May 14, 2008, Aug. 20, 2008, eff. Sept. 1, 2008; Oct. 14, 2013, eff. Nov. 1, 2013.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

Notes of Decisions (26)

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 1.06, TX ST RULES DISC P 1.06
Current with amendments received through 3/15/2015

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          a-1. Rules of Disciplinary Procedure (Refs & Annos)
            Part II. The District Grievance Committees

V.T.C.A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.16

2.16. Confidentiality

Currentness

A. All members and staff of the Office of Chief Disciplinary Counsel, Board of Disciplinary Appeals. Committees, and Commission shall maintain as confidential all Disciplinary Proceedings and associated records, except that:

1. the pendency, subject matter, status of an investigation, and final disposition, if any, may be disclosed by the Office of Chief Disciplinary Counsel or Board of Disciplinary Appeals if the Respondent has waived confidentiality, the Disciplinary Proceeding is based on conviction of a serious crime, or disclosure is ordered by a court of competent jurisdiction;

2. if the Evidentiary Panel finds that professional misconduct occurred and imposes any sanction other than a private reprimand.

a. the Evidentiary Panel's final judgment is a public record from the date the judgment is signed; and

b. once all appeals, if any, have been exhausted and the judgment is final, the Office of Chief Disciplinary Counsel shall, upon request, disclose all documents, statements, and other information relating to the Disciplinary Proceeding that came to the attention of the Evidentiary Panel during the Disciplinary Proceeding;

3. the record in any appeal to the Board of Disciplinary Appeals from an Evidentiary Panel's final judgment, other than an appeal from a judgment of private reprimand, is a public record; and

4. facts and evidence that are discoverable elsewhere are not made confidential merely because they are discussed or introduced in the course of a Disciplinary Proceeding.

B. The deliberations and voting of an Evidentiary Panel are strictly confidential and not subject to discovery. No person is competent to testify as to such deliberations and voting.

C. Rule 6.08 governs the provision of confidential information to authorized agencies investigating qualifications for admission to practice, attorney discipline enforcement agencies, law enforcement agencies, the State Bar's Client Security Fund, the State

Bar's Lawyer Assistance Program, the Supreme Court's Unauthorized Practice of Law Committee and its subcommittees, and the Commission on Judicial Conduct.

## Credits

Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Renumbered from Rule 2.15 and amended by orders of Dec. 29, 2003, eff. Jan. 1, 2004. Amended by order of Dec. 7, 2009, eff. Jan. 1, 2010.

<An order of the Supreme Court dated Feb. 26, 1991, as amended by an order of the Supreme Court dated Oct. 9, 1991, adopted the Texas Rules of Disciplinary Procedure, eff. May 1, 1992.>

Notes of Decisions (1)

V. T. C. A., Govt. Code T. 2, Subt. G App. A-1, Disc. Proc., 2.16, TX ST RULES DISC P 2.16
Current with amendments received through 3/15/2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Government Code (Refs & Annos)
>     Title 2. Judicial Branch (Refs & Annos)
>       Subtitle G. Attorneys
>         Chapter 81. State Bar (Refs & Annos)
>           Subchapter E. Discipline (Refs & Annos)

V.T.C.A., Government Code § 81.072

§ 81.072. General Disciplinary and Disability Procedures

Effective: September 1, 2013
Currentness

(a) In furtherance of the supreme court's powers to supervise the conduct of attorneys, the court shall establish disciplinary and disability procedures in addition to the procedures provided by this subchapter.

(b) The supreme court shall establish minimum standards and procedures for the attorney disciplinary and disability system. The standards and procedures for processing grievances against attorneys must provide for:

(1) classification of all grievances and investigation of all complaints;

(2) a full explanation to each complainant on dismissal of an inquiry or a complaint;

(3) periodic preparation of abstracts of inquiries and complaints filed that, even if true, do or do not constitute misconduct;

(4) an information file for each grievance filed;

(5) a grievance tracking system to monitor processing of grievances by category, method of resolution, and length of time required for resolution;

(6) notice by the state bar to the parties of a written grievance filed with the state bar that the state bar has the authority to resolve of the status of the grievance, at least quarterly and until final disposition, unless the notice would jeopardize an undercover investigation;

(7) an option for a trial in a district court on a complaint and an administrative system for attorney disciplinary and disability findings in lieu of trials in district court, including an appeal procedure to the Board of Disciplinary Appeals and the supreme court under the substantial evidence rule;

(8) an administrative system for reciprocal and compulsory discipline;

(9) interim suspension of an attorney posing a threat of immediate irreparable harm to a client;

(10) authorizing all parties to an attorney disciplinary hearing, including the complainant, to be present at all hearings at which testimony is taken and requiring notice of those hearings to be given to the complainant not later than the seventh day before the date of the hearing;

(11) the commission adopting rules that govern the use of private reprimands by grievance committees and that prohibit a committee:

(A) giving an attorney more than one private reprimand within a five-year period for a violation of the same disciplinary rule; or

(B) giving a private reprimand for a violation:

(i) that involves a failure to return an unearned fee, a theft, or a misapplication of fiduciary property; or

(ii) of a disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct; and

(12) distribution of a voluntary survey to all complainants urging views on grievance system experiences.

(b-1) In establishing minimum standards and procedures for the attorney disciplinary and disability system under Subsection (b), the supreme court must ensure that the statute of limitations applicable to a grievance filed against a prosecutor that alleges a violation of the disclosure rule does not begin to run until the date on which a wrongfully imprisoned person is released from a penal institution.

(b-2) For purposes of Subsection (b-1):

(1) "Disclosure rule" means the disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct.

(2) "Penal institution" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

(3) "Wrongfully imprisoned person" has the meaning assigned by Section 501.101.

(c) In addition to the minimum standards and procedures provided by this chapter, the supreme court, under Section 81.024 shall prepare, propose, and adopt rules it considers necessary for disciplining, suspending, disbarring, and accepting resignations of attorneys.

(d) Each attorney is subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct.

(e) The state bar shall establish a voluntary mediation and dispute resolution procedure to:

(1) attempt to resolve each allegation of attorney misconduct that is:

(A) classified as an inquiry under Section 81.073(a)(2)(A) because it does not constitute an offense cognizable under the Texas Disciplinary Rules of Professional Conduct; or

(B) classified as a complaint and subsequently dismissed; and

(2) facilitate coordination with other programs administered by the state bar to address and attempt to resolve inquiries and complaints referred to the voluntary mediation and dispute resolution procedure.

(e-1) All types of information, proceedings, hearing transcripts, and statements presented during the voluntary mediation and dispute resolution procedure established under Subsection (e) are confidential to the same extent the information, proceedings, transcripts, or statements would be confidential if presented to a panel of a district grievance committee.

(f) Responses to the survey provided for in Subsection (b)(12) may not identify either the complainant or attorney and shall be open to the public. The topics must include:

(1) treatment by the grievance system staff and volunteers;

(2) the fairness of grievance procedures;

(3) the length of time for grievance processing;

(4) disposition of the grievance; and

(5) suggestions for improvement of the grievance system.

(g) A person may not maintain an action against a complainant or witness in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified.

(h) The state bar or a court may not require an attorney against whom a disciplinary action has been brought to disclose information protected by the attorney-client privilege if the client did not initiate the grievance that is the subject of the action.

(i) A panel of a district grievance committee of the state bar that votes on a grievance matter shall disclose to the complainant and the respondent in the matter the number of members of the panel:

    (1) voting for a finding of just cause;

    (2) voting against a finding of just cause; and

    (3) abstaining from voting on the matter.

(j) A quorum of a panel of a district grievance committee of the state bar must include one public member for each two attorney members.

(k) A member of a panel of a district grievance committee of the state bar may vote on a grievance matter to which the panel was assigned only if the member is present at the hearing at which the vote takes place.

(l) A person may be appointed to serve on a panel of a district grievance committee of the state bar only if the person is a member of the district grievance committee from which the panel was assigned and the person was appointed to serve on the committee in strict accordance with the Texas Rules of Disciplinary Procedure.

(m) A panel of a district grievance committee of the state bar may not be changed in size for the purpose of obtaining a quorum on the panel without the approval of the complainant and the respondent in the grievance matter to which the panel was assigned.

(n) A member of a panel of a district grievance committee of the state bar may not be substituted with another member of the district grievance committee on the day of the hearing for which the panel was assigned without the approval of the complainant and the respondent in the grievance matter.

(o) Whenever a grievance is either dismissed as an inquiry or dismissed as a complaint in accordance with the Texas Rules of Disciplinary Procedure and that dismissal has become final, the respondent attorney may thereafter deny that a grievance was pursued and may file a motion with the tribunal seeking expunction of all records on the matter, other than statistical or identifying information maintained by the chief disciplinary counsel pertaining to the grievance.

**Credits**

Added by Acts 1987, 70th Leg., ch. 148, § 3.01, eff. Sept. 1, 1987. Amended by Acts 1991, 72nd Leg., ch. 795, § 20, eff. Sept. 1, 1991; Acts 2001, 77th Leg., ch. 1436, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 227, §§ 15, 16, eff. Sept. 1, 2003; Acts 2013, 83rd Leg., ch. 450 (S.B. 825), § 1, eff. Sept. 1, 2013.

Notes of Decisions (20)

V. T. C. A., Government Code § 81.072, TX GOVT § 81.072

Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

848 S.W.2d 298
Court of Appeals of Texas,
Austin.

UNIVERSITY INTERSCHOLASTIC
LEAGUE and Bailey Marshall, Appellants,

v.

Bruce LaFeyette BUCHANAN, et al., Appellees.
UNIVERSITY INTERSCHOLASTIC LEAGUE
and Dr. Bailey Marshall, Appellants,

v.

Phillip Earl BOMAR, Jr., et al., Appellees.

Nos. 3–92–108–CV, 3–92–161–CV.   |   Feb. 3,
1993.   |   Rehearing Overruled March 31, 1993.

Learning disabled high school athletes sought to permanently enjoin organization regulating high school athletics from enforcing rule precluding participation by athletes over 19 years old. The 331st and 53rd Judicial District Courts, Travis County, B.B. Schraub, J., granted the injunction, and organization appealed. The Court of Appeals, Kidd, J., held that: (1) athletes were "disabled" under Rehabilitation Act; (2) organization failed to reasonably accommodate athletes by not allowing exceptions to rule; (3) students' failure to exhaust remedies under Individuals with Disabilities Education Act did not deprive trial court of jurisdiction; and (4) "public interest exception" to mootness doctrine permitted review.

Affirmed.

**Attorneys and Law Firms**

**\*299** William C. Bednar, Jr., Eskew, Muir & Bednar, Austin, for University Interscholastic League.

James R. Raup, McGinnis, Lochridge & Kilgore, Austin, for Austin Independent School Dist. and Dr. Jim Hensley.

Diane M. Henson, Graves, Dougherty, Hearon & Moody, Austin, for Bruce LaFeyette Buchanan and Phillip Earl Bomar, Jr.

Leonard J. Schwartz, Schwartz & Eichelbaum, P.C., Austin, for Dallas Independent School Dist. and Dr. Marvin E. Edwards.

Before CARROLL, C.J., and JONES and KIDD, JJ.

**Opinion**

KIDD, Justice.

The University Interscholastic League and its Executive Director, Bailey Marshall, **\*300** (collectively hereinafter the "UIL") appeal the judgment of the trial court granting a permanent injunction against the enforcement of the UIL's over–19 rule. [1] We will affirm the judgment of the district court.

**FACTUAL BACKGROUND**

Composed of representatives of Texas school districts, the UIL is a voluntary organization that regulates, among other things, the competitive athletics of the junior and senior high school student athletes in Texas. This case involves a challenge to section 400(a) of the UIL Constitution and Contest Rules (the "over–19 rule") which states: "Subject to the other sections of this subchapter, an individual is eligible to participate in a League varsity contest as a representative of a participant school if that individual ... is less than 19 years old on September 1 preceding the contest...."

The UIL states that the underlying purpose of the over–19 rule is to ensure the safety of the participating student athletes and the equality of competitors. It argues that one policy justification for the over–19 rule is the avoidance of potential injury which might result if younger, less developed high school students are required to compete against older students. Furthermore, the UIL argues that the over–19 rule discourages the practice of "redshirting," i.e., having students repeat grades so that they will be more mature and better athletes during their high school years. The UIL permits no exception to or waiver of the over–19 rule based on special circumstances of individual students.

Appellees, Bruce Buchanan and Phillip Bomar (the "Students"), obtained permanent injunctions allowing them to participate in the 1991 football season. The final judgments rendered in these causes stated that the over–19 rule violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp.1992) ("Section 504"), as applied to the Students. Section 504 provides in pertinent part:

> No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of

this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

[29 U.S.C.A. § 794](#).

The factual bases for the permanent injunctions involving the Students are as follows.

### Bruce Buchanan

Buchanan turned nineteen years old before he entered the twelfth grade at Travis High School of the Austin Independent School District ("Austin ISD"). Because he had learning disabilities, he had repeated the first and seventh grades. During ninth grade, Buchanan began participating in his school's football program. Although he was nineteen at the start of his senior year, Buchanan was below the average weight and height of his team members, and he never was a starter on the team.

Both Buchanan's mother and his Admission, Review and Dismissal (ARD) Committee [2] requested a waiver from the over–19 rule. The UIL responded that there were "no rules which allow for a waiver of the 19–year–old rule." Buchanan instituted this lawsuit against the UIL and its director, and later joined Austin ISD and Dr. **\*301** Jim Hensley, the Superintendent of Austin ISD, as defendants in the suit to enjoin the enforcement of the rule.

### Phillip Bomar

Bomar was also nineteen years of age at the start of his senior year. He had repeated his fourth and seventh grades, and was classified by his school district, Dallas Independent School District ("Dallas ISD"), as learning disabled. Like Buchanan, Bomar began playing football for his high school, Justin F. Kimball High School. Bomar was average in size compared to the other members of his football team and was a starting linebacker during his junior year of high school.

Bomar's mother and high school principal applied for a waiver of the over–19 rule for Bomar, which the UIL refused. In response, Bomar filed this action against the UIL, its director, Dallas ISD, and Dr. Marvin Edwards, the Superintendent of Dallas ISD.

### CROSS–CLAIMS OF THE SCHOOL DISTRICTS

Both school districts filed cross-claims against the UIL, stating that the UIL's mandatory forfeiture rule caused them to violate the rights of the Students. Section 700(a)(2)(C)(ii) of the UIL Constitution and Contest Rules (the UIL's "mandatory forfeiture rule") provides that if a school allows a student who is finally determined ineligible to participate in a UIL contest under a court order, the school must forfeit all contests in which the student participated. In the past, the UIL has enforced the mandatory forfeiture rule to require that a school forfeit all of its contests in which the litigating student participated even though the student's participation was pursuant to a lawful court-ordered injunction. [3]

In October 1991, the trial court issued temporary orders enjoining the enforcement of the over–19 rule against the Students and the mandatory forfeiture rule against Austin ISD and Dallas ISD. These two causes were then consolidated for purposes of trial and appeal. After a trial on the merits, the district court rendered a final judgment in favor of the Students and the school districts, enjoining the enforcement of the two rules.

From this judgment, the UIL appeals bringing forth four points of error.

### IMPACT OF THE REHABILITATION ACT ON THE OVER–19 RULE

**[1]** **[2]** In order to obtain injunctive relief, an applicant must establish the existence of a wrongful act, imminent harm, and irreparable injury, and the absence of an adequate remedy at law. *Hues v. Warren Petroleum Co.,* 814 S.W.2d 526, 529 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex.App.—Dallas 1989, no writ). The decision to grant or deny a permanent injunction lies within the trial court's sound discretion, and appellate review is restricted to whether the action involved a clear abuse of discretion. *Hues,* 814 S.W.2d at 529; *Priest,* 780 S.W.2d at 875.

**[3]** **[4]** The UIL argues in its first two points of error that the trial court erred in granting the permanent injunctions against the over–19 rule and in awarding attorneys' fees. [4] In

its first point of error, the UIL alleges that the rule does not discriminate solely on the basis of the Students' handicaps; the UIL maintains that the Students are ineligible due to their ages which are determined by their birth dates. The rule and its purposes, it contends, apply equally to both handicapped and non-handicapped students.

**\*302** We agree that the UIL's enforcement of its over–19 rule as to these Students was not on the basis of a current handicap or because of a history of being handicapped. However, the record clearly demonstrates that both Students repeated grades in school because of learning disabilities. Had they not experienced difficulties in the classroom and progressed through school at a pace slower than most students, they would have turned nineteen after September 1 of their senior year and thus would have been age-eligible to participate in interscholastic athletics.

The United States District Court, in *Doe v. Marshall,* 459 F.Supp. 1190 (S.D.Tex.1978), *vacated and remanded on other grounds,* 622 F.2d 118 (5th Cir.1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981), [5] invoked a balancing test of the harms inflicted upon the various parties in its determination of whether to grant a preliminary injunction of a UIL rule. *Id.* at 1192. In the present cases, evidence demonstrated that the Students would benefit emotionally by participating in competitive athletics. The evidence did not show that these Students had been involved in redshirting or that they presented a danger to other student athletes; the concerns that made the rule necessary are not present in these causes and the UIL is not harmed. Thus, the equities before the trial court weighed in favor of enjoining the enforcement of the rule.

The United States Supreme Court has stated that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers.... [T]o assure meaningful access, *reasonable accommodations* in the grantee's program or benefit may have to be made." *Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (discussing *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)) (emphasis added). Furthermore, the United States Court of Appeals in *Brennan v. Stewart,* 834 F.2d 1248, 1262 (5th Cir.1988), concluded that "our precedent requires that the 'reasonable accommodation' question be decided as an issue of fact...."

Although the UIL provides a waiver procedure for some eligibility rules, e.g., the four-year eligibility rule, it fails to furnish such a process for the over–19 rule. Since the UIL already utilizes a waiver procedure for some rules, the evidence indicates that instituting such a procedure for the over–19 rule might be a reasonable accommodation in the UIL program to ensure that handicapped persons achieve meaningful access to the competitions regulated by the UIL. We find the U.S. District Court's reasoning on this issue in *Booth v. University Interscholastic League,* No. A–90–CA–764 (W.D.Tex. Oct. 4, 1990) (case dismissed as moot Jan. 14, 1991), particularly persuasive:

> [T]o uphold the [UIL's] blanket policy against consideration of the Plaintiff's circumstances in this case would be to undermine the objectives of the Rehabilitation Act without advancing the policies behind the 19 year-old eligibility rule. There is no evidence before the Court to suggest that the [UIL] bases its decision to bar the Plaintiff from playing high school football on any particular harm that might result if he is allowed to play, or on anything other than a policy of strictly enforcing its rules. But the Rehabilitation Act *requires* that federally assisted programs do more for those who fall within its ambit. For these reasons, requiring the [UIL] to give special consideration to the Plaintiff based on his history of being handicapped is a reasonable accommodation.

*Booth,* at 11–12. The Students in these causes are entitled to special consideration by the UIL to guarantee that the objectives of Section 504 are effectuated. A waiver mechanism for the over–19 rule would permit the UIL to consider the facts of particular situations in order to make individualized determinations as to the enforcement of the rule. Such determinations are *reasonable accommodations* which would advance both the purposes of Section 504 and the policies behind the over–19 rule. Under **\*303** these factual circumstances, the "no-exception" policy to the over–19 rule must yield to Section 504's reasonable accommodation requirement established by the United States Supreme Court in *Alexander.*

Accordingly, we hold that the trial court did not abuse its discretion in enjoining the enforcement of the over–19 rule. Points of error one and two are overruled.

### EXHAUSTION OF REMEDIES

 **[5]**    In its third point of error, the UIL alleges that, because the Students did not exhaust the administrative remedies under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C.A. §§ 1400–1484 (West Supp.1992), [6] the district court lacked jurisdiction over the causes. Specifically, it complains that the Students did not comply with section 1415(f) of the IDEA which states, "before the filing of a civil action under [the Rehabilitation Act and] such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C.A. § 1415(f). The applicable remedy under this statute consists of a due process hearing and subsequent review for any complaint raised by a handicapped child or its parents regarding the child's education. 20 U.S.C.A. § 1415(b)(2), (c). The UIL maintains that the Students did not comply with this prerequisite for civil suits because they did not request a due process hearing to contest the exclusion of interscholastic athletics from their IEPs. [7]

The Students respond that the IDEA and Section 504 are different statutes with different purposes. They urge that while the IDEA strives to assure that handicapped children receive appropriate free public education, Section 504 prohibits discrimination against handicapped persons. *See Smith v. Robinson,* 468 U.S. 992, 1016, 104 S.Ct. 3457, 3470, 82 L.Ed.2d 746 (1984). The Students argue that their complaint is against the UIL for discrimination on the basis of their handicaps, not against the school districts for denial of a free appropriate public education; hence, relief was only available under Section 504. They argue that, because the UIL is not vested with the duty to provide a free appropriate public education under the IDEA, the Students could not assert their action against the UIL under the IDEA. The record reflects that the school districts applied to the UIL for waivers to the rule which the UIL denied. Therefore, the Students and their school districts acted in accordance with the UIL rules, and the cause of action was governed by Section 504 and not the IDEA. We agree with the Students regarding this exhaustion of remedies point, and thus we overrule the UIL's third point of error.

### MANDATORY FORFEITURE RULE

In its fourth and final point of error, the UIL contends that the trial court erred in enjoining the mandatory forfeiture rule and in awarding attorneys' fees. It insists that "the rule is reasonably related to a legitimate state purpose and is not arbitrary, capricious, or fundamentally unfair."

**Issue of Mootness**

The Students reurge this Court to dismiss the appeal as moot. [8] They argue that since the 1991 football season has ended and they have graduated, an active controversy **\*304** no longer exists. The school districts respond by urging that such action on our part would vacate the trial court's judgment and would permit the UIL to invoke the sanctions contained in the mandatory forfeiture rule.

 **[6]**    **[7]**    **[8]**    The mootness doctrine is well established. Appellate courts only determine cases in which an actual controversy exists. *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988); *Texas Educ. Agency,* 797 S.W.2d at 369. The issue of whether an injunction is valid becomes moot when the injunction does not continue to have effect. *See Parr v. Stockwell,* 322 S.W.2d 615, 616 (Tex.1959); *Texas Educ. Agency,* 797 S.W.2d at 369; *Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ). An appellate court must set aside the judgment and dismiss the cause when an appeal is moot. *Texas Educ. Agency,* 797 S.W.2d at 369; *Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass Clubs,* 622 S.W.2d 594, 596 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

 **[9]**    Two exceptions to the mootness doctrine currently exist: (1) the "capable of repetition exception" and (2) the "collateral consequences exception." *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). However, neither exception applies to these causes. *See Spring Branch I.S.D.,* 764 S.W.2d at 18–19.

The UIL urges this Court to avoid dismissal by adopting a new exception to the mootness doctrine, the "public interest exception." According to the UIL, thirty-six states have recognized the "public interest exception," which allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public but for

some reason evades appellate review. The UIL points out that other states have applied this doctrine in high school athletic controversies such as this one.

In *Texas Education Agency,* 797 S.W.2d at 369, under similar facts as these, we determined that the appeal was moot because the football eligibility of the litigating students had expired. *See also Spring Branch I.S.D.,* 764 S.W.2d at 18. However, these cases are distinguishable from the instant cause. In neither of those cases was the question of attorneys' fees involved. [9] Furthermore, in the instant cause, the school districts, which are parties to this appeal, have a direct interest in the continued viability of the district court judgment to prevent the UIL from enforcing the mandatory forfeiture rule. *See Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir.1976) (Student brought action to compel university to grant a degree. After injunctive relief was granted, university awarded degree and appealed the judgment. The Fifth Circuit Court of Appeals held that the case was not moot because the legal interests of the parties continued to be adverse.). Therefore, because of these distinguishing facts, we have decided to review the case pursuant to a "public interest

exception" to the mootness doctrine, and adhere to our earlier ruling overruling the Students' motion to dismiss the appeal as moot.

Because we elect to review these causes under the "public interest exception" to the mootness doctrine, and because we affirm the lower court's final judgment that the over–19 rule violates Section 504 of the Rehabilitation Act, we affirm the district court's ruling that the Students were eligible to play football during the 1991 season. Therefore, since there is no basis for the UIL to invoke the mandatory forfeiture rule, we have no need to address its fourth point of error.

### CONCLUSION

Finding no error, the judgment of the district court is affirmed.

**Parallel Citations**

81 Ed. Law Rep. 1145, 1 A.D.D. 742, 3 NDLR P 263

Footnotes

1      As a preliminary matter, we address the Students' motion to dismiss this appeal as moot. For reasons discussed later in this opinion, we decline to dismiss the appeal as moot.

2      The ARD Committee is composed of, at a minimum, a school administrator, a special education teacher, a regular education teacher, and the child's parent. Other persons may be included in the ARD Committee if determined to be necessary. One of the functions of the ARD Committee is to develop an individualized educational plan (IEP) for the student. Buchanan's IEP did not include interscholastic football as part of his program. Buchanan never petitioned for an administrative appeal of the decision of the ARD Committee to the Texas Education Agency. Buchanan's mother testified that because the ARD Committee recommended a waiver from the over–19 rule, she agreed with its decision, and thus did not feel it was necessary to appeal the decision.

3      *See Texas Educ. Agency v. Dallas Indep. Sch. Dist.,* 797 S.W.2d 367, 369 (Tex.App.—Austin 1990, no writ). (This Court held that the appeal in that case was moot, and therefore the underlying order was vacated. Accordingly, the UIL's determination of ineligibility became final and triggered the enforcement of the mandatory forfeiture rule).

4      As a preliminary matter, the UIL contends in its second point of error that the Students do not meet the definition of "qualified handicapped persons" under section 504 of the Rehabilitation Act. After reviewing the Act and its attendant regulations, we reject this argument and conclude that both students meet the definition of "qualified handicapped persons."

5      Although not controlling, this Court looks to federal precedent for its persuasive value.

6      Among the stated purposes of IDEA are

to assure that all children with disabilities have available to them, within the time periods specified in section 1412(2)(B) of this title, a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of children with disabilities and their parents or guardians are protected....

20 U.S.C.A. § 1400(c).

7      The UIL admitted in oral argument that had the school districts declared the Students eligible under the IDEA, the UIL would not have abided by such determination. We also note that the school districts requested waivers from the UIL of

the over–19 rule, and therefore the Students had no need to invoke an administrative procedure designed to request affirmative action from the school authorities.

8  We overruled the Students' original motion to dismiss as moot.

9  If we moot this appeal and the judgment of the district court is vacated, the judgment for attorneys' fees is vacated as well.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.